## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JERRY WAYNE BLEVINS, JR.,** | * |
| | * |
| Petitioner, | * |
| | * |
| v. | *   Case No.: RWT-11cv2690 |
| | * |
| **DAYENA M. CORCORAN,** *et al.* | * |
| | * |
| Respondents. | * |

## MEMORANDUM OPINION

On September 19, 2011, Jerry Wayne Blevins, Jr. ("Blevins") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his March 12, 2008, conviction in the Circuit Court of Baltimore County, Maryland.   ECF No. 1.   On February 16, 2012, the Respondents filed their opposition, ECF No. 10, to which Blevins replied on March 8, 2012. ECF No. 12.   After reviewing these papers, the court finds no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *see also* 28 U.S.C. § 2254(e)(2).   For the reasons discussed below, the Petition will be denied and dismissed and a Certificate of Appealability denied.

### Procedural History and Background

On August 13, 2007, Blevins was charged with first-degree rape, armed robbery, first-degree assault, and a weapons offense.   ECF No. 10, Ex. 1.   On March 12, 2008, Blevins appeared before the Honorable Kathleen Cox to enter an *Alford*[1] plea to one count of second-degree rape.[2]   *Id.*, Ex. 2 at 3.   The prosecutor indicated the maximum twenty-year sentence would be recommended, and defense counsel indicated she would argue for a lesser period of

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

[2] The State entered a nolle prosequi as to the remaining counts.  ECF No. 10, Ex. 2 at 3.

incarceration after preparation of a presentencing report and psychiatric evaluation. Blevins was informed of the maximum possible sentence for second-degree rape and that he would be required to register as a violent sexual offender. *Id.*, Ex. 2 at 5, 8.

Upon judicial inquiry, Blevins acknowledged that he had reviewed the elements of the crime and discussed the case with his attorney, Jennifer Aist. *Id.* at 5. Blevins affirmed that he understood that the offense to which he was entering a plea carried a maximum sentence of 20 years in prison and acknowledged that, as a result of entering a plea, he would give up his right to a jury or bench trial, the right to subpoena, confront and cross-examine witnesses, and would have limited rights of appeal. *Id.* at 5-7. Blevins confirmed on the record that he was satisfied with trial counsel's performance. *Id.* at 7-8. Counsel indicated that she had spoken several times to Blevins concerning the decision to enter the plea, and also discussed the plea with Blevins' family and provided Blevins with information concerning his family's position in support of his decision. *Id.* at 10.

Following the plea colloquy, the State recited into the record the facts supporting the plea:

> On Saturday night, March 15, 2003, into the early morning hours of March 16, 2003, the victim in this case, Sonya Marie Herr, who has a date of birth of March 29, 1997, was just two (2) weeks shy of her sixteenth birthday when this incident happened.
>
> She had gone out that evening with some friends. They went down to a club in the city. She did consume some alcoholic beverages, and she came back in the car with her friends back to her neighborhood, the Hawthorn neighborhood in the eastern area of Baltimore County. She was living with her parents and siblings at a residence on Cockspur Road in the Hawthorn neighborhood.
>
> She got into an argument with one of the people in the car she was in, and she asked to be let out of the car at the corner Kingston Road and Eastern Avenue. She got out of the car and went into Geresbeck Grocery Store which is located there. She purchased a

2

pack of cigarettes and was walking down Kingston Road to go home. Her road, Cockspur Road, was off Kingston Road.

As she was walking on Kingston between Redthorn and Coralthorn Roads, she heard a subject come up to her from behind. Before she could turn around to look, she was grabbed from behind with a hand over her mouth and a hand on her waist. The subject grabbed her and forced her into the alley between Redthorn and Coralthorn Roads, and she ended up behind the house located at 2155 Redthorn Road.

The subject grabbed her and stated: 'Bitch, if you look at me, I will stab you and kill you.' The only identification that she could ascertain at that time, it was a white male, approximately six feet tall, short brown hair, possibly wearing and blue and white sweater or hoody.

Once the victim was forced into the ally, she was forced down to the ground onto her hands and knees. From behind the subject pulled down her pants and underwear, he also took off her shoes and socks. The subject then took out his penis and penetrated her vaginally. She was not sure whether or not he ejaculated. He completely removed her pants and underwear as well as her socks and shoes.

Once the subject was finished, he grabbed her purse which contained $ 6.00, cigarettes, and makeup. He told her if she looked at him or screamed he would kill her, and then he left the location. She believed that he possibly got into a light blue compact car with four doors and circle-type headlights when he left the location.

She got up and was able to retrieve her underwear and pants, which she put back on. She was also able to find her shoes, which she put back on. She was not able to find her socks or her purse. She ran home five blocks to get help. She arrived and made contact with her parents.

Her parents called the police and officers did arrive. Officer Holt was first to arrive. She was able to identify the location where the assault had happened and crime scene investigators did recover one of her socks in the middle of the ally right next to where the assault occurred. The other sock and purse was not recovered.

After the victim showed where the rape occurred, she was transported to GBMC and was subjected to a SAFE exam submitted by Soraya Sina, a forensic nurse with GBMC. The exam

showed signs of assault. There were abrasions and tears in the vaginal areas consistent with sexual assault.

A SAFE kit was also done and swabs were taken from the vaginal and cervical areas. Those swabs were submitted to the Baltimore County Crime Lab, and a DNA profile was abstracted from those swabs. There was a female profile from the non-sperm fraction that was from the victim. There was also a male DNA profile from the sperm fraction of the sample. It was compared with numerous potential subjects and it was negative as to all of those suspects. So, at that point, it was an unknown suspect.

The DNA profile was entered into CODIS, the national DNA database, in 2003 when the initial analysis was done. In May of 2007, the Baltimore County Police Crime Lab did receive information that a match had happened. A match was confirmed through CODIS with a subject who was incarcerated in Ohio. He gave a DNA sample as a result of a conviction in that state, and he was then identified as Jerry Wayne Blevins, Jr. Thereafter, a warrant was issued for Mr. Blevins. He was arrested by Baltimore County Police on July 24, 2007. He was placed under arrest and transported to headquarters for processing.

He was advised of his rights per Miranda, and he indicated to the officers and detectives that he wished to speak to an attorney. At that point he was provided with the charging documents against him without being asked any questions. He did state at that time, 'You're not going to find anything from me inside of her,' and he denied being involved in this crime.

After he was transported to the precinct for processing, an officer at the precinct overheard him while he was on the telephone with someone. He had indicated to whomever he was talking to that, 'she was a fling before my wife and I got together. It's not like I was screwing around with her. She was drunk, I was drunk. That's all it was.'

The subsequent DNA analysis done by the Baltimore County Crime Lab did confirm once again that the DNA taken from the rape kit, taken from the victim the night of the assault did match the Defendant's DNA and as far as the frequency for Caucasian, the chances of it being Mr. Blevins are 1 and 3.3 quadrillion. This was the confirmed DNA of the victim at the time / date of the assault.

> At no time did the victim give this Defendant permission to touch
> her in any way. All events occurred in Baltimore County, and that
> would be the facts in support of the plea, your Honor.

*Id*. at 11-15.  No objections or additions to these facts were made and the court accepted the plea.

*Id*. at 15.  On May 29, 2008, Blevins was sentenced to twenty years' incarceration.  ECF No. 10,

Ex. 3 at 13.  Blevins did not file an application for leave to appeal the entry of his plea, but did

file unsuccessfully for panel review of his sentence and for sentence reconsideration.  *Id*., Ex. 4

at 6.

On January 21, 2009, Blevins filed a petition for state post-conviction relief in the Circuit

Court for Baltimore County.  As presented and construed, the petition alleged that: (A) trial

counsel was ineffective for (1) misinforming him with respect to the elements of second-degree

rape, (2) misinforming him with respect to his potential defense, (3) failing to investigate the

case to show he had some prior contact with the victim, (4) providing incorrect information as to

the strength of the prosecution, (5) failing to present a defense, (6) failing to present mitigating

evidence at sentence and (7) withholding evidence from him; and (B) the prosecutor committed

misconduct by changing one word of Blevins' statement to the police.  ECF No. 10, Ex. 4-7.

At the post-conviction hearing, testimony was given by Blevins, his mother, and defense

counsel Aist.  Blevins conceded guilt but indicated he believed his sentence was unjust.  *Id., Ex.

6 at 11.  Blevins complained that Aist told him he was guilty and encouraged him to enter a plea

rather than risk going to trial on all the charged offenses.  *Id*. at 15, 31-33.  Blevins stated that

Aist failed to obtain evidence establishing that he and the victim had interacted before the rape.

*Id*. at 15-23. With respect to the withholding of exculpatory evidence, Blevins did not specify

who withheld it from him, the prosecutor, or the defense. *Id*. at 24-25.  Blevins' prosecutorial

misconduct claim was based on an allegation that the State changed the words in a statement he

made to make the statement sound more incriminating. *Id*. at 26-28. Blevins testified that he was not provided charging documents as described in the factual statement supporting the plea and that he was not provided other relevant information. *Id*. at 28-31. He complained that Aist misadvised him that consent was not a defense to third-degree sexual offense, *id*. at 33-35, and suggested he should not have been convicted because the victim was intoxicated. *Id*. at 35-36. Blevins asked Aist to investigate whether the victim had accused other people of rape and whether she had a criminal record. *Id*. at 37-38. He also claimed that Aist failed to present witnesses at his sentencing proceedings. *Id*. at 39-41.

Aist testified that she sent Blevins the discovery that she had received, including the medical examination of the victim. *Id*. at 59. Aist stated that the DNA report of the rape was reviewed by an office expert who confirmed its authenticity. *Id*. at 61, 64. She stated that there were no areas to attack the DNA evidence or challenge its admission. *Id*. at 61. She also indicated that Blevins admitted to her that he had sexual contact with the victim; initially, Blevins, who insisted there had been no vaginal intercourse, stated he told her "it was fellatio, then it later changed to the victim had masturbated him." *Id*. at 62-63. Aist stated that she reviewed the SAFE exam with Blevins in one of her meetings with and reviewed the elements of the charged offenses with Blevins each of the several times she met with him. *Id* at 64-67. Aist informed Blevins that consent was not a defense to certain sexual offense counts because of the victim's age, fifteen. *Id*. Aist stated that she informed Blevins that the victim had an impeachable offense, and that she was on probation at the time he entered his plea. *Id*. at 68, 76.

According to Aist, Blevins named "Kathy Kalb" as a person who could confirm that Blevins knew the victim prior to the incident. *Id*. at 70-71. Aist stated that she interviewed Kalb, who could only confirm contact between Blevins and the victim after the rape occurred.

*Id.* at 71.  Kalb, who was the only witness identified by Blevins, did not corroborate that the victim knew Blevins prior to the rape.  *Id.* at 71, 74.  Aist testified that she gave Blevins her assessment of the prosecution's case against him, and investigated whether the victim previously had accused an individual named Joe Cooper or anyone else of rape, but found no evidence that she had.  *Id.* at 73-75.  Aist indicated Blevins did not ask her to call Kalb to sentencing, and that Blevins' mother and aunt were present at sentencing, but did not speak.  *Id.* at 77-78.

Post-conviction relief was denied in a memorandum opinion and order filed on March 5, 2010.  *Id.*, Ex. 7.  Blevins sought leave to appeal the post-conviction decision, which, as supplemented, alleged that: (A) trial counsel was ineffective for (1) misinforming him with respect to the elements of second degree rape, (2) failing to investigate or present mitigating evidence at sentencing, (3) failing to investigate the case sufficiently to show that he had some prior contact with the victim, and (4) withholding information from him; (B) the post-conviction court did not address his attempt to discharge trial counsel; and (C) the prosecutor improperly changed his statement.  *Id.*, Ex. 8.  Leave to appeal was summarily denied by the Court of Special Appeals of Maryland in an unreported opinion filed on August 19, 2011.[3]  *Id.*, Ex. 9.

In his § 2254 petition, Blevins challenges his plea and sentences on two separate grounds: (A) the prosecutor committed misconduct by changing a word in his statement to the police; and (B) trial counsel was ineffective for (1) failing to investigate and uncover the name of another man accused of raping the victim, (2) failing to investigate mitigating evidence and present witnesses at sentencing, (3) providing incorrect information concerning the strength of the prosecution's case against him, (4) failing to present a defense and call witnesses; (5)

---

[3] The mandate issued on September 12, 2011.

withholding evidence from him, and (6) giving Blevins the wrong elements of second-degree rape.

## **Standard of Review**

The federal habeas statute, 28 U.S.C. § 2254, as amended, provides a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). This "highly deferential" standard is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. __, ___, 131 S.Ct. 1388, 1398 (2011); *see also Harrington v. Richter*, 562 U.S. __, __, 131 S.Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). Petitioner carries the burden of proof to meet this standard. *See Pinholster*, 131 S.Ct. at 1398.

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring). "Under the ("unreasonable application") clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

The amendments to 28 U.S.C. § 2254, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), require this court to limit its analysis to the law as it was "clearly established" by precedent at the time of the state court's decision.  Section 2254 (d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of a petitioner's case.  *Williams*, 529 U.S. at 413 (O'Connor, J., concurring); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002).  In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced."  *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003) (citing *Williams,* 529 U.S. at 407).  To be "unreasonable," the state court's application of Supreme Court precedent must have been more than incorrect or erroneous.  *Id.* at 75.  The state court's application must have been "objectively unreasonable."  *See Williams*, 529 U.S. at 409; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

**Analysis**

**A.  Prosecutorial Misconduct**

It is undisputed that "[a] fair trial in a fair tribunal is a basic requirement of due process."
*In re Murchison*, 349 U.S. 133, 136 (1955).   Likewise, it has long been held that prosecutors are
held to a high standard of fairness.  *See Berger v. United States*, 295 U.S. 78, 88 (1935).  In order
to establish prejudicial misconduct on the part of the prosecutor, Blevins must establish that the
alleged misconduct must have "so infected the trial with unfairness as to make the resulting
conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986); *United
States v. Caro*, 597 F.3d 608, 624-25 (4th Cir. 2010).

Blevins' claim that exculpatory evidence was withheld, ECF No. 1 at 5, is in reality a
claim that the prosecution improperly changed a word within a statement Blevins made to the
police that made him seem more culpable.[4]  The state court rejected this claim:

> The Petitioner's claim here is not terribly clear. During the Post-
> Conviction hearing he testified that the State "changed" evidence,
> in the form of a recorded statement. He also claimed that there was
> evidence that was not given to him by the State, and that he asked
> Ms. Aist to retrieve this information but she "wouldn't get it for
> me."
>
> The evidence does not support the Petitioner's claims. He did
> introduce an exhibit, marked Petitioner's Exhibit No. 4, authored
> by a police officer named Allan Hines. Officer Hines wrote that on
> July 24, 2007, Mr. Blevins was making a telephone call after being
> arrested and processed; and that Mr. Blevins told the person on the
> other end of the telephone call that "she was a fling before my wife
> and I got together it's not like I was screwing around on her. She
> was drunk, I was drunk that's all it was." Petitioner testified that
> Exhibit 4 was changed from "I was screwing around with her" to
> "I was screwing around on her." There is no logical reason why

---

[4]  To the extent Blevins complains that the document was altered or that the officer improperly listened to his
telephone conversation, such claims provide no basis for habeas corpus relief.  Where, as here, a defendant
voluntarily enters a guilty plea, he waives challenges to any deprivation of constitutional rights that occurred prior to
the plea.  *See Tollett v. Henderson,* 411 U.S. 258, 267 (1973).

> Officer Hines or anyone else would make this change. Petitioner fails to prove that the document would have been used in the prosecution of his case, even if it had been changed. Because the Petitioner failed to specify what other evidence he claims was withheld by the State or by his attorney, this ground for Post-Conviction relief will not be sustained.

ECF No. 10, Ex. 7 at 14-15.  The state court's rejection of this claim is fully supported by the record and refutes any notion that there was any non-disclosure, given that the substance of the statement Blevins gave to the police was included in the factual statement read into the record in support of the plea.  ECF No. 10, Ex. 2 at 11-15.  The court concurs with Respondents' argument that any difference between the words "with" and "on" is immaterial, given that Blevins entered a guilty plea.  Thus, the denial of post-conviction as to this claim was a reasonable application of the law that survives scrutiny under 28 U.S.C. § 2254(d).

### B.  Ineffective Assistance of Counsel

The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs the standard for examining ineffective assistance claims.  First, a petitioner must demonstrate that the performance of his counsel was deficient by falling below an objective standard of reasonableness.  *Id.*  Second, a petitioner must demonstrate that he suffered prejudice as a result of the defective performance.  *Id.*  The Supreme Court has made it clear that courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered a sound trial strategy."  *Id.* at 689.  In the context of a § 2254 proceeding, it is not sufficient to convince the federal habeas court that the state court merely applied *Strickland* incorrectly.  Rather, a petitioner must show that the state court applied *Strickland* to the facts in an objectively unreasonable manner.  *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  To obtain relief from a guilty plea based on

ineffective assistance, Blevins must show that (1) counsel was incompetent and that (2) he would not have pleaded guilty but for counsel's incompetence.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

The first prong of the *Strickland* test requires an evaluation of counsel's performance in light of an "objective standard of 'reasonably effective assistance' under 'prevailing professional norms.'"  *Briley v. Bass*, 750 F.2d 1238, 1247 (4th Cir. 1984). The American Bar Association's standards, recognized by the Supreme Court as "guides to determining what is reasonable," *Strickland*, 466 U.S. at 688, provide guidelines concerning the proper relationship between defense counsel and client in the plea agreement context.  The second prong under *Strickland* requires Blevins to show that there was "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[5]  *Hill*, 474 U.S. at 59.   This analysis shall govern the court's examination of the six grounds of ineffective assistance raised herein.

### 1.  Investigation of Prior Allegations of Rape

Blevins first contends that trial counsel failed to investigate whether the victim had accused another man, Joe Cooper, of raping her.  ECF No. 1 at 4.  Blevins raised this claim initially on post-conviction, but failed to pursue the claim in his application for leave to appeal the denial of post-conviction relief.  ECF No. 10, Ex. 8.  Respondents argue the claim should be rejected as procedurally defaulted and this court need not reach the merits of the claim.

If procedural default occurs, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and

---

[5] Further, where counsel substantially misinforms the client at to the maximum possible sentence, a guilty plea cannot stand.  *See Manley v. United States,* 588 F.2d 79, 81-82   (1978); *Hammond v. United* States, 528 F.2d 15, 18 (4th Cir. 1975).  Counsel's bad guess as to what a judge may do, however, does not require vacatur of a sentence. *See United States v. Futeral,* 539 F.2d 329, 330-31 (4th Cir. 1975).  Such error did not occur here.

prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[6]   *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620.  "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488).  Where a claim of ineffective assistance of trial counsel is defaulted because it was not properly raised in an initial collateral review due to ineffective assistance of post-conviction counsel, there is cause to excuse the default, but only if the ineffective assistance of trial counsel claim is substantial.  *See Martinez v. Ryan*, _ U.S. _ , 132 S. Ct. 1309, 1319 (2012).  This is the case with an ineffective assistance of counsel claim because "[t]he right to the effective assistance of counsel at trial is a bedrock principle in our justice system." *Id*. at 1317.  Conversely, if the ineffective assistance of trial counsel claim "does not have any merit or . . . is wholly without factual support" the procedural default precludes federal habeas review.  *Id*. at 1319.  Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice.[7]   *See Schlup v. Delo*, 513 U. S. 298, 314 (1995).

---

[6]  Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief.  *See Murray*, 477 U.S. at 496.  "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003).  Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).  The Supreme Court recently held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." *Martinez v. Ryan*, _ U.S. __, 132 S. Ct. 1309, 2012 WL 912950 at *5.  A *Martinez* exception is not apparent here.

[7]  As previously noted, Blevins conceded his guilt at post-conviction.

13

Whether the claim was procedurally defaulted or not, it is clear that a fundamental miscarriage of justice will not occur if this court does not reach the merits of the claim asserted. The post-conviction court addressed Blevins' assertion after obtaining testimony from defense counsel and Blevins, and explained that counsel did investigate and found no evidence that the victim had ever accused anyone else of rape.  ECF No. 10, Ex. 7 at 15.  The analysis of the post-conviction court makes clear that the claim asserted here does not warrant a waiver of the procedural default doctrine; the merits of the claim will not be reached.

### 2.  Investigation into Mitigating Evidence

Blevins next claims that counsel failed to investigate mitigating evidence.  He argues that at his post-conviction hearing, plea counsel lied in testifying that Kathy Kalb, a potential witness, could not confirm that Blevins and the victim knew each other prior to the rape.  The state court denied this claim:

> Here, the Petitioner complains that Ms. Aist failed to interview Kathy Kolb and other neighbors to determine if they could offer positive testimony to support Petitioner's claim that he knew the victim. Ms. Aist testified that she did interview Ms. Kolb, and that Ms. Kolb would testify that she did not know the Petitioner or the victim until the year 2005 - two (2) years after the rape occurred.
>
> Generally the Court finds that, based on Ms. Aist's affirmative testimony, she investigated all reasonable potential defense witnesses before making her plea recommendation. This claim presents no basis for postconviction relief.

*Id.*, Ex. 7 at 13.  The post-conviction court assessed plea counsel's credibility and determined credible her testimony concerning investigation of potential witnesses, including Kathy Kolb. This factual determination is presumed to be correct under 28 U.S.C. § 2254(e)(1), and is afforded deference here.

### 3.   Incorrect Assessment of the Strength of the Prosecution's Case

This third claim is unclear; at best, Blevins appears to contend that plea counsel conveyed that the prosecution's case was much stronger than the evidence read into the record during the plea colloquy.  Blevins raised this claim, in a fashion, at both the post-conviction circuit and appellate levels, and this court will attempt to address this poorly crafted claim.  Aist testified at the post-conviction hearing that she provided Blevins with a straight forward appraisal of the State's case against him. ECF No. 10, Ex. 6 at 73-74.  Evidence included unchallengeable DNA evidence and a victim with a steadfast and consistent account of the crime perpetrated against her. *Id*. at 61, 64, 66, 74. As the state court reasonably concluded, *id.* Ex. 7 at 15, there is no evidence that Aist inaccurately informed Blevins concerning the strength of the State's case.  Thus, this claim provides no basis for federal habeas corpus relief.  *See* 28 U.S.C. § 2254(d).

### 4.   Failure to Present a Defense or Call Witnesses

At his post-conviction hearing, Blevins complained that plea counsel failed to call his mother, his aunt, and Kathy Kolb at his sentencing hearing. Blevins argues here that these individuals could have informed the court that he had been misadvised regarding the elements of rape.  ECF No. 1 at 6.  Blevins generally complained counsel fialed to call these individuals as witnesses provided no details about what testimony they would have simply providing,[8] but premised the need for testimony from these individuals on his desire to offer mitigation testimony:

> In his Post-Conviction hearing testimony, Petitioner complained that Ms. Aist failed to call his mother and his aunt at the sentencing hearing; and he again complained that Ms. Aist failed to call Kathy Kolb at that hearing.
>
> Petitioner provided no detail as to what it was that any of these witnesses would have said that would have constituted competent

---

[8] Thus, the claim presented here is procedurally defaulted.

> mitigation evidence at sentencing. Upon a review of the testimony and remarks made during Judge Cox's sentencing hearing, and an analysis of her reasoning for imposing the twenty (20) year sentence, it is highly unlikely that anything any of these witnesses might have said would have influenced Judge Cox one way or the other. The Petitioner has failed to meet his burden in regard to this claim.

ECF No. 10, Ex. 7 at 16. This court has examined the record and concurs with these findings.

### 5. Withholding Evidence

Blevins next contends that counsel withheld evidence from him prior to his plea and

Sentencing. ECF No. 1 at 7-8. The state post-conviction court disagreed:

> In response to questions about this claim, Petitioner began to discuss his desire to fire Ms. Aist and hire a private attorney in the underlying criminal matter. He provided no competent testimony to support the claim that Ms. Aist withheld anything from him much less any facts or information that might have made a difference to Judge Cox in fashioning her sentence. Petitioner has failed to meet his burden in establishing a deficiency in Ms. Aist's performance under the circumstances.

ECF No. 10, Ex. 7 at 16-17. The post-conviction court later added:

> The Court is persuaded by Ms. Aist's testimony that, on December 14, 2007, she forwarded to him all of the paper discovery that had been furnished by the State. While Ms. Aist testified that there were two (2) discs that she did not send to the Petitioner before he entered his plea (because he would have had no way of viewing them in the Baltimore County Detention Center), Petitioner failed to establish at the Post-Conviction hearing the content of these discs, and whether or not they might have contained relevant information. Petitioner's claim is a bald allegation, which cannot form a basis for proper Post-Conviction relief. The Court is not convinced that Ms. Aist withheld anything of relevance from the Petitioner before he entered his plea.

*Id.* at 17. Blevins failed to produce evidence at post-conviction proceedings to support this

claim, and the post-conviction court credited Aist's testimony was that she supplied Blevins with

information and documentation related to the case and discussed the information with him at the

several meetings they had before Blevins entered his plea.  *Id.*, Ex. 6 at 59-78. The state court's finding shall be upheld here, pursuant to 28 U.S.C. § 2254(d).

### 6.   Misadvice of Counsel

In his final claim, Blevins claims that counsel misadvised him regarding the elements of second-degree rape, the charge to which he pled guilty. ECF No. 1 at 8-9. The state post-conviction court was not persuaded by this claim:

> Petitioner's first claim is premised upon his testimony that Ms. Aist informed him that Second Degree Rape under Maryland law was the equivalent of "statutory rape" as it is colloquially known. Petitioner argues that he only pled guilty to Second Degree Rape because Ms. Aist informed him that, whether he was proven to have used force or a threat of force, or not, he would be found guilty of Second Degree Rape by virtue of the victim's age.

> Maryland law as to the types and variations of rape and sex offenses can be vexing and difficult. However, the two (2) relevant varieties of Second Degree Rape under Maryland Code Annotated, Criminal Law Article, § 3-304 are: a) vaginal intercourse by force or threat of force without consent (without regard to the age of the victim) and b) vaginal intercourse if the victim is under fourteen (14) and the defendant is four (4) years older than the victim (without regard to the use of force or threat of force or consent of the victim).

> Petitioner testified that Ms. Aist informed him that he would be found guilty of Second Degree Rape whether he was proven to have used force or not. And, he claims this was incorrect legal advice since the victim was fifteen (15) years old at the time of the incident on March 15, 2003.

> The Court is not persuaded that Ms. Aist gave the Petitioner incorrect legal advice when explaining to him the elements of a Second Degree Rape before his plea. Rather, the Court finds that the Petitioner misunderstood her advice or simply ignored it. Alternatively, and more likely, the Petitioner was not candid when he testified at the post-conviction hearing about Ms. Aist's explanation of the elements of the offense of Second Degree Rape.

> Ms. Aist testified credibly that the Petitioner insisted in her conversations with him, that his defense was that there was no

vaginal intercourse between he and the victim at all at the time of the occurrence; that he initially told her that the parties engaged in fellatio; and then that the victim engaged in masturbation with the Petitioner. Ms. Aist testified that he suggested to her that his DNA may have been found in the victim's vaginal area because "she must have touched herself in the vaginal area." Under all of the circumstances, the Court is convinced that Ms. Aist accurately and correctly explained to the Petitioner, before his plea, that the State would have to establish that he employed force or a threat of force in engaging in vaginal intercourse with the victim to sustain its burden of proof. Ms. Aist did not advise the Petitioner that he would be found guilty of Second Degree Rape based on the victim's age. The Court does not find credible the testimony that Ms. Aist gave that advice.

To the extent that there was confusion on the part of the State and/or Ms. Aist as to the elements of Second Degree Rape, expressed during the course of the Post-Conviction hearing, this does not cause the Court to conclude that inaccurate legal advice was given to the Petitioner before the plea. Indeed, after the Post-Conviction hearing, the State's Attorney who represented the State in the Post-Conviction case wrote the Court and stated as follows:

> "Ms. Polis [Petitioner's counsel] and I further agree that there is no allegation that Ms. Aist incorrectly advised Mr. Blevins as to the elements of Rape in the Second Degree during the course of her representation of him . . . "

The Petitioner has failed to establish that Ms. Aist was ineffective in giving incorrect legal advice as to the elements of Second Degree Rape before he knowingly, voluntarily, and intelligently tendered his plea in the underlying case.

ECF No. 10, Ex. 7 at 10-13. This determination is supported by the record and thus survives scrutiny under 28 U.S.C. § 2254(d). Blevins confirmed at the plea hearing that he had been informed of the elements of second-degree rape. *Id.*, Ex. 2 at 5. Aist testified unequivocally at the post-conviction hearing that she informed Blevins of the elements of second-degree rape, prior to his entering the plea. *Id.*, Ex. 6 at 64-65. Only Blevins' post-conviction attorney exhibited confusion over the elements of second-degree rape, and this confusion was clarified by

a letter sent to the court confirming an agreement between counsel that Aist had, in fact, properly advised Blevins as to the elements of second-degree rape.[9]

## Certificate of Appealability

A Certificate of Appealability ("COA") shall not issue absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable.  *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).  Reasonable jurists would not find Blevins' claims debatable.

## Conclusion

For the reasons stated above, Blevins' Petition for Writ of Habeas Corpus will be denied and a Certificate of Appealability shall not issue.  A separate order follows.

Date: <u>August 29, 2012</u>                                          <u>        /s/        </u>
                                                                      ROGER W. TITUS
                                                                      UNITED STATES DISTRICT JUDGE

---

[9] To the extent Blevins contends that Aist misinformed him concerning the elements of third-degree sexual offense, ECF No. 1 at 6, 8-9, the Court notes that Blevins did not plead guilty to third degree sexual offense  In any event, Md. Code Ann., Crim. Law. Art. §3-307 (4) (2002), defines a sexual offense in the third degree as a sexual act with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old.  At the time of the events here the victim was 15 years old and Blevins was 27 years old.  ECF No. 10, Ex. 6 at 84.